No. 23-1578

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

GEOCOMPLY SOLUTIONS INC.,

*Plaintiff-Appellant*,

v.

XPOINT SERVICES LLC,

*Defendant-Appellee*.

Appeal from the U.S. District Court for the District of Delaware,
No. 1:22-cv-01273-WCB (Circuit Judge William C. Bryson)

## DEFENDANT-APPELLEE'S RESPONSE BRIEF

Peter A. Swanson
Gary M. Rubman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 778-6000

Michael E. Bowlus
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, 54th Floor
San Francisco, CA 94105
Tel: (415) 591-7014
Fax: (415) 955-6514

*Counsel for Defendant-Appellee Xpoint Services LLC*

Dated: October 10, 2023

## CLAIMS 1, 7, AND 8 OF U.S. PATENT NO. 9,413,805

1. A method for determining a geo-location, the method comprising:

transmitting a request to a first server by a first device;

collecting geolocation data associated with the first device in response to the request, the geolocation data collected by a module stored in memory and executed by a processor on the first device, the first device in communication with the first server which provides a service over a network;

identifying that one or more selected programs are present at the first device;

transmitting the geolocation data and programs and a list of the present selected programs to a second server;

receiving a geolocation message from the second server, the geolocation message generated at least in part from the geolocation data and a list of the present selected programs; and

providing the received geolocation message to the first server.

7. The method of claim 1, wherein the programs include a proxy application.

8. The method of claim 1, wherein the programs include a screen sharing program.

# CERTIFICATE OF INTEREST

Counsel for Xpoint Services LLC certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1.    **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Xpoint Services LLC

2.    **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3.    **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Xgroup Holdings Limited is the parent corporation of Xpoint Services LLC. No publicly held company owns 10% or more stock in Xpoint Services LLC.

4.    **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP: Jack Blumenfeld, Jeremy A. Tigan

5.    **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

None.

6.　**Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated: October 10, 2023　　　　　　*/s/ Peter A. Swanson*

　　　　　　　　　　　　　　Peter A. Swanson
　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　One CityCenter
　　　　　　　　　　　　　　850 Tenth Street, NW
　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　Tel: (202) 662-6000
　　　　　　　　　　　　　　Fax: (202) 778-6000

　　　　　　　　　　　　　　*Counsel for Defendant-Appellee Xpoint*
　　　　　　　　　　　　　　*Services LLC*

# TABLE OF CONTENTS

Introduction ................................................................................... 1

Statement of the Issues .................................................................. 3

Statement of the Case ................................................................... 4

    I.    The '805 Patent ................................................................ 4

    II.   Xpoint Moved to Dismiss GeoComply's Complaint
       Under Section 101, and GeoComply's Opposition Brief
       Did Not Present Any Arguments Specific to Claims 2–
       10. ...................................................................................... 7

    III.  The District Court Held That the '805 Patent Claims
       Are Invalid Under Section 101. ........................................ 9

       A.   *Alice* Step One .......................................................... 9

       B.   *Alice* Step Two .......................................................... 11

Summary of the Argument ........................................................... 14

Argument ..................................................................................... 16

    I.    The District Court Properly Dismissed GeoComply's
       Complaint Because the '805 Patent Claims Ineligible
       Subject Matter ................................................................. 16

       A.   At *Alice* Step One, the District Court Properly
           Held That Claim 1 Is Directed to an Abstract
           Idea. ......................................................................... 17

           1.   Claim 1 is directed to a method of
               organizing human activity and a
               longstanding commercial practice. ..................... 18

           2.   Claim 1 fails to recite any specific
               technological solution or improvement ............... 24

3.  Claim 1 amounts to collecting, transmitting, and analyzing data in functional terms. ............33

4.  Claim 1 is broad in scope. ....................36

B.  At *Alice* Step Two, the District Court Correctly Held That Claim 1 Lacks an Inventive Concept. .........38

1.  None of the elements individually transforms claim 1 into a patent-eligible application. ..........................................38

2.  The elements in combination fail to transform the claim into a patent-eligible application. ..........................................41

3.  *CosmoKey* and *DDR* are inapposite because the '805 patent does not claim any specific technological solution. .........................................44

4.  GeoComply's selective excerpts from the specification fail to establish an inventive concept. .................................................48

5.  There are no factual disputes concerning whether claim 1 contains an inventive concept. .................................................51

C.  The District Court's Analysis of Dependent Claims 7 and 8 Does Not Warrant Reversal. ..............55

1.  GeoComply waived any separate argument as to the eligibility of claims 7 and 8. .................55

2.  In any event, claims 7 and 8 are ineligible. ........58

D.  The District Court's Discussion of Examples in Its Step One Analysis Does Not Warrant Reversal. .........61

II.    The District Court Properly Denied Leave to Amend the Complaint Because GeoComply's Proposed Allegations Were Futile. ....................................................... 64

Conclusion ............................................................................ 67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.,*
  838 F.3d 1266 (Fed. Cir. 2016) ......................................... 61

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016) .................................... 13, 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014) .................................................. *passim*

*Ancora Techs., Inc. v. HTC Am., Inc.,*
  908 F.3d 1343 (Fed. Cir. 2018) .............................. 22, 31, 32

*Berkheimer v. HP Inc.,*
  881 F.3d 1360 (Fed. Cir. 2018) ......................................... 57

*Beteiro, LLC v. BetMGM, LLC,*
  626 F. Supp. 3d 789 (D.N.J. 2022) ............................... 19, 20

*Bridge and Post, Inc. v. Verizon Commc'ns, Inc.,*
  778 F. App'x 882 (Fed. Cir. 2019) (non-precedential) ........................ 54

*Bruni v. City of Pittsburgh,*
  824 F.3d 353 (3d Cir. 2016) .............................................. 63

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018) ....................... 42, 43, 58, 59

*Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.,*
  No. 1:22-cv-1260, 2023 WL 4850567 (D. Del. July 28, 2023) ........................................... 56

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
  927 F.3d 1306 (Fed. Cir. 2019) ......................................... 54

*ChargePoint, Inc. v. SemaConnect, Inc.,*
  920 F.3d 759 (Fed. Cir. 2019) ......................................... 36

iv

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
    916 F.3d 1350 (Fed. Cir. 2019) .......................................................... 63

*CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) ............................................... 44, 45, 46

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) ............................................................ 22

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ....................................... 44, 46, 47, 48

*Dropbox, Inc. v. Sychronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) (non-precedential) ................. 24, 53

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ................................................... *passim*

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................. 33, 35, 36

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ......................................................... 25

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) .................................................... 31, 32

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021) ............................................. 25, 41, 43

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ......................................................... 56

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) .......................................................... 63

*Hylete LLC v. Hybrid Athletics, LLC*,
    931 F.3d 1170 (Fed. Cir. 2019) .................................................... 40, 55

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) .................................................... *passim*

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ........................................ 18, 21, 23, 41

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ................................................... 18

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) .................................................. *passim*

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) ...................................................... 33

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ................................................ 31, 32

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ..................................................... 51

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ..................................................... 34

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) .................................................. *passim*

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ................................................. *passim*

*Splunk Inc. v. Cribl, Inc.*,
No. 3:22-cv-7611, 2023 WL 2562875 (N.D. Cal. Mar. 17,
2023) ............................................................................... 56

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019) ........................................ 30, 31, 32, 35

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) .............................................. 24, 30, 32

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ...................................................... 29

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ................................................. 27, 39

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) .................................................... 10, 34

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) .................................................... *passim*

*USC IP P'ship, L.P. v. Meta Platforms, Inc.*,
    No. 2022-1397, 2023 WL 5606977 (Fed. Cir. Aug. 30,
    2023) (non-precedential) .................................................................... 48

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ........................................................... 48

**Statutes**

35 U.S.C. § 101 ................................................................... *passim*

## STATEMENT OF RELATED CASES

Appellee Xpoint Services LLC ("Xpoint") is not aware of any appeal in or from the same civil action below that was previously before this Court or any other appellate court.

Xpoint's counsel is not aware of any case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case.

## INTRODUCTION

The '805 patent presents a clear case of subject matter ineligibility under section 101. The patent claims a software method that purports to determine the location of a device based on geolocation data and a list of programs present on the device, including programs that may be used to "spoof" a user's location. The patent concedes that techniques already existed for determining the location of a device using geolocation data, and the patent did not invent, improve on, or even disclose any technique for detecting the presence of programs on a device. The claims of the patent simply apply conventional program detection functionality to the context of geolocation in a generic, results-oriented manner.

The district court (Circuit Judge Bryson, sitting by designation) correctly held that the claims are ineligible because they recite an abstract idea—determining the location of a device based on geolocation data and programs on the device—without providing any specific technical solution for implementing this idea. The concept of verifying an individual's location using multiple sources of information is a longstanding practice that addresses the real-world problem of individuals misrepresenting their locations. The claims here do no more

1

than apply this concept to the area of geolocation with the use of conventional functionality and generic components.

The '805 patent does not solve any technical challenges associated with the specific problem of location-spoofing programs on a computing device. The claims do not say how to identify such programs or what to do when such a program is identified. They merely claim the *end result* of determining geolocation based on the presence of programs, rather than any specific solution to a technological problem. Under this Court's precedent, such claims are not eligible under section 101.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that the claims of the '805 patent are invalid under section 101 as a matter of law where the claims recite conventional geolocation functionality in combination with conventional program detection functionality, without providing any technological solution to any technical problem presented by the combination.

2.    Whether the district court correctly denied GeoComply leave to amend its complaint where the proposed amended allegations failed to identify any specific technological solution to any technical problem addressed by the claims.

## STATEMENT OF THE CASE

### I.    The '805 Patent

U.S. Patent No. 9,413,805 ("the '805 patent") is titled "Geolocation Engine." Appx45. The specification describes a geolocation method that uses multiple sources of data to determine a user's location. Appx54 (2:3–5). As illustrated in Figure 3 of the patent (reproduced below), the sources of data can include both geolocation data (*e.g.*, IP address or WiFi data) and data regarding programs installed on a user's device that may allow the user to mask his or her true location (*e.g.*, screen sharing or proxy programs):



Appx49 (Fig. 3); *see also* Appx54 (2:7–10).

The patent acknowledges that geolocation data may be collected using third-party services already in existence. Appx56 (5:60–61) (stating that "[t]he present system may use raw geolocation data from third parties"); *id.* (6:3–6) ("Information for determining location may be retrieved from several sources. For example, WiFi data may be received from Skyhook Wireless and IP Database information may be retrieved from MaxMind, Inc.").

As to the program data, the specification explains that "[s]creen sharing protection module 330" and "[p]roxy detection module 340" (shown in Figure 3 above) check for the presence of one of these programs. Appx55 (3:42–43, 3:48–49). The patent provides no further explanation for how the modules accomplish program detection. *See* Appx55 (3:43–47) (stating only that *if* a screen sharing program is detected, the module "may block the program or otherwise communicate its presence as part of the overall decision on allowing the device to access a service provided by gaming server 160"); *id.* (3:49–53) (same statement as to "proxy program" and "[p]roxy detection module").

The specification states that the computers used to perform the steps of the geolocation method include "any" type of "computing device,"

Appx57 (8:48–52); *see also* Appx58 (9:60–62), and that the components of such computers include "a broad category of such computer components that are well known in the art," Appx57 (8:47–48); *see also* Appx58 (9:58–59) (same statement as to "mobile device components").

Claim 1 of the '805 patent recites a "method for determining geo-location," in which a "geolocation message" is generated based on geolocation data and a list of programs on a device. The message is then provided to a server that the device seeks to access. Claim 1 is reproduced below:

> 1. A method for determining a geo-location, the method comprising:
>
> transmitting a request to a first server by a first device;
>
> collecting geolocation data associated with the first device in response to the request, the geolocation data collected by a module stored in memory and executed by a processor on the first device, the first device in communication with the first server which provides a service over a network;
>
> identifying that one or more selected programs are present at the first device;
>
> transmitting the geolocation data and programs and a list of the present selected programs to a second server;

6

> receiving a geolocation message from the second server, the geolocation message generated at least in part from the geolocation data and a list of the present selected programs; and
>
> providing the received geolocation message to the first server.

Appx58 (10:15–33).

Claims 2 through 9 depend from claim 1. *See* Appx58. On appeal, GeoComply discusses claims 7 and 8, which recite that the "programs" in claim 1 include "a proxy application" and "a screen sharing program," respectively. *Id.* The final claim, independent claim 10, restates the steps of claim 1 in apparatus form. *Id.* Although the patent frequently discusses geolocation in the context of online gaming, *see, e.g.*, Appx54 (1:5–13), none of the claims is limited to gaming.

## II. Xpoint Moved to Dismiss GeoComply's Complaint Under Section 101, and GeoComply's Opposition Brief Did Not Present Any Arguments Specific to Claims 2–10.

GeoComply and Xpoint are geolocation providers, including for online gaming companies. Appx70 (¶ 2); Appx71 (¶ 4); Appx73 (¶¶ 18–19). After GeoComply sued Xpoint for infringement of the '805 patent, Appx70–88, Xpoint filed a motion to dismiss GeoComply's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Appx208–33.

In its motion, Xpoint explained how each claim of the '805 patent fails to qualify as patent-eligible subject matter under 35 U.S.C. § 101. Appx208–28. In response, GeoComply did not present any arguments specific to claims 2–10. As to dependent claims 2–9, GeoComply's brief included a blanket assertion in a footnote that those claims "add further technical limitations to the steps described in independent claim 1." Appx311 (n.1). As to claims 7 and 8 in particular, the brief included one sentence summarizing their limitations. Appx311.

GeoComply argued before the district court that GeoComply should be granted leave to amend its complaint if Xpoint's motion were granted. Appx323. Before ruling on the motion, the district court gave GeoComply an opportunity to explain "what additional allegations it would raise in an amended complaint" if the motion to dismiss were granted. Appx64. GeoComply thereafter filed a proposed amended complaint, Appx600–32, with the amendments related to section 101 taken almost verbatim from the background section of GeoComply's brief in opposition to the motion. *Compare* Appx865–67 (redline showing proposed changes to original complaint) *with* Appx305–06 (GeoComply's opposition brief).

### III.  The District Court Held That the '805 Patent Claims Are Invalid Under Section 101.

Following a hearing, the district court issued a 43-page decision holding the claims ineligible under section 101. Appx1–43. The court denied GeoComply leave to amend and thus dismissed GeoComply's complaint with prejudice.[1] Appx42–44.

#### A.  *Alice* Step One

At *Alice* step one, the court held that the '805 patent claims are directed to the abstract idea of "determining the location of a device based on geolocation information and programs present on the device." Appx11–12. The court identified several reasons for this conclusion.

First, the district court recognized that the idea of verifying a person's location is, "at its core, a 'method of organizing human activity,'" Appx12, and is analogous to routine and longstanding business practices in both the gaming industry and other contexts, Appx12–13.

---

[1] Xpoint's motion to dismiss also challenged the sufficiency of GeoComply's infringement allegations. Appx228–32. The district court agreed with Xpoint in part, holding that GeoComply failed to plausibly allege infringement of claim 10. Appx42. The court's evaluation of GeoComply's infringement allegations is not at issue on appeal.

Second, the court observed that the '805 patent does not "disclose or claim any meaningful advance in computing technology." Appx13. Noting that the claims recite only generic computer components, the court held that "simply applying those generic components in a new context—in this case, to verify a person's location—does not render the claimed advance of the patent any less abstract." Appx13–14.

Third, the court explained that the claims "are directed to the 'collection of information, comprehending the meaning of that collected information, and indication of the results,'" which are steps that this Court "has characterized as markers of an abstract idea." Appx14 (quoting *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022)).

Fourth, the district court pointed out that claim 1 recites mainly "functional terms" that describe "functional results" without detailing "'how to achieve th[o]se results in a non-abstract way.'" Appx15 (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)). The court noted the "high level of abstraction" contained in the steps of claim 1, *e.g.*, "transmitting a request," "collecting

10

geolocation data," and "identifying that one or more programs are present." *Id.*

Fifth, the court observed that claim 1, if patentable, would "result in the preemption of a wide range of activities relating to geolocation, even outside the context of online gaming." *Id.*; *see also* Appx16–17 (providing multiple examples illustrating the breadth of the claims).

Finally, the court analyzed case law regarding the eligibility of patent claims related to authentication and network security, and the court distinguished cases on which GeoComply relied. Appx 17–22.

## B.    *Alice* Step Two

At *Alice* step two, the district court concluded that claim 1 lacks an inventive concept because it amounts to a "generic implementation of an abstract idea, with no explanation of how the results claimed in the patent are accomplished." Appx23–24. The court also noted GeoComply's failure to allege what specifically in claim 1 constitutes the inventive concept underlying the invention. Appx25.

The court explained that the portions of the specification cited by GeoComply failed to demonstrate an inventive concept because they discuss purported benefits that are not tied to the limitations of claim 1.

Appx27. The court further held that the "conclusory and undetailed" allegations in GeoComply's complaint "fail to raise a factual question regarding *Alice* step two." Appx27–29.

The court likewise held that GeoComply's proposed amended allegations—which consisted primarily of excerpts from a law journal article and two web stories—were insufficient to establish an inventive concept because they set forth "general assertions of inventiveness, wholly divorced from the elements of the claims." Appx30–31. The court thus concluded that the proposed amendments were futile, and it denied GeoComply leave to amend. Appx29.

The district court also held that GeoComply waived any argument on dependent claims 2–9, because it neglected to offer any separate argument that they contain inventive concepts. Appx32. Still, the court considered each dependent claim and concluded that none contained an inventive concept sufficient to satisfy step two of *Alice*. Appx32–36. As to claims 7 and 8, the court held that they fail at step two because the claims "recite only the functional result of detecting a proxy application or a screen sharing program, respectively, without any 'further specification

of a particular technology' for doing so." Appx35 (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016)).

## SUMMARY OF THE ARGUMENT

I.     The '805 patent claims ineligible subject matter. At *Alice* step one, the claims are directed to the abstract idea of determining the location of a device based on geolocation information and programs present on the device. The concept of verifying location based on multiple sources of information is a longstanding practice used to address the real-world problem of individuals misrepresenting their location. The claims fail to recite any specific technological solution to a problem unique to location verification in the realm of computers. It is undisputed that the '805 patent does not claim any improvement to conventional methods of collecting geolocation data and identifying programs on a user's device. Nor do the claims say how the geolocation and program data is used to determine geolocation. Instead, the patent uses functional language to claim the result of a "geolocation message" generated from conventionally collected geolocation and program data. That is an unpatentable abstract idea.

At *Alice* step two, the claims lack an inventive concept. The claim limitations recite generic "servers" and a "device" that carry out conventional computer activity. Together, the limitations reflect only the

unpatentable idea of combining conventional program detection with conventional geolocation technology in a results-oriented way. None of the conclusory allegations in GeoComply's complaint precluded dismissal because they did not plausibly and specifically explain how the claims recite an inventive concept.

GeoComply's untimely reliance on claims 7 and 8 fails. GeoComply waived any argument on these claims by failing to present it to the district court, and in any event, the additional limitations in those claims fail to establish eligibility.

Contrary to GeoComply's argument, the district court did not improperly rely on materials outside the pleadings, and even if there were error, it was harmless.

II.    The district court properly denied leave to amend because GeoComply's proposed amended allegations were futile as to section 101. None of the proposed allegations addressed the shortcomings in the original complaint because they did not identify, even in conclusory fashion, anything in the claims that reflected an inventive concept.

## ARGUMENT

**I.    The District Court Properly Dismissed GeoComply's Complaint Because the '805 Patent Claims Ineligible Subject Matter.**

In *Alice*, the Supreme Court established a two-part test to determine whether a patent is invalid under section 101 for claiming ineligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). At the first step, the court must determine if the claims at issue are directed to an abstract idea or other excluded subject matter. *Id.* at 217. At the second step, the court considers whether the claims contain an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18 (cleaned up).

Where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," eligibility "can be determined at the Rule 12(b)(6) stage." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (cleaned up; citation omitted). This Court frequently affirms Rule 12(b)(6) dismissals under this standard. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (collecting cases).

16

Here, the district court correctly concluded that the claims of the ’805 patent are directed to an abstract idea and fail to recite an inventive concept. Because the complaint did not contain any plausible factual allegations concerning eligibility, the district court properly dismissed the complaint.

On appeal, GeoComply challenges the district court’s ruling as to claims 1, 7, and 8. GeoComply fails to identify any error in the court’s decision.

## A.    At *Alice* Step One, the District Court Properly Held That Claim 1 Is Directed to an Abstract Idea.

Step one requires “look[ing] at the focus of the claimed advance over the prior art to determine if the claim’s character as a whole is directed to excluded subject matter.” *Affinity Labs*, 838 F.3d at 1257 (cleaned up). The district court here held that the claims of the ’805 patent are directed to the abstract idea of “determining the location of a device based on geolocation information and programs present on the device.” Appx11–12. GeoComply largely agrees with the district court’s characterization of the claimed advance. GeoComply Br. 1 (“In addition to collecting ordinary geolocation data, such as the user’s IP address or GPS coordinates, GeoComply’s invention checks the user’s device for the presence of

certain programs, such as these proxy programs."). As the court concluded, this alleged advance is an abstract idea under controlling precedent.

### 1. Claim 1 is directed to a method of organizing human activity and a longstanding commercial practice.

Methods of organizing human activity and longstanding commercial practices are abstract ideas. *See, e.g.*, *Alice*, 573 U.S. at 220; *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020); *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). In cases of alleged technological innovations, this Court has noted that it is "useful" to consider analogies to the brick-and-mortar world. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogizing a physical mailroom to a claim reciting redistribution of email messages). Here, real-world analogies demonstrate that claim 1 is directed to a method of organizing human activity and a longstanding commercial practice—namely, verifying a person's location, including based on multiple sources of information—rather than "a technological problem with computers," GeoComply Br. 17.

First, claim 1 seeks to verify a person's location—which, as the district court concluded, is a method of organizing human activity. Appx12. Before the advent of online gaming, casinos and other betting operations took steps to ensure that persons seeking to place wagers were located within an acceptable location. One example is a casino that straddled the state line between Nevada and Utah. *See Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 800 (D.N.J. 2022) (citing Howard Hickson, *Wendover Will*, GREAT BASIN COLL., https://www.gbcnv.edu/howh/WendoverWill.html). The casino was required to determine that a person was on the Nevada side of the building before that person could place a bet. *Id*. Another example is a Nevada regulation that prohibits "messenger betting," which is the practice of placing a bet using a proxy bettor. *Id*. (citing Nev. Gaming Reg. § 22.060(5)). To comply with the regulation, those accepting bets in Nevada must determine "that the person truly placing a bet is located in the state." *Id*. This example is particularly apt because it involves sportsbooks seeking to prevent bettors from obscuring their true locations through the use of a proxy, similar to how an online bettor might use a proxy application to obscure his or her true location. *See*

19

Appx54 (2:8–10) (noting "attempts to mask a digital user's location through . . . use of 'proxy servers'").

Second, the way in which the patent seeks to verify location—*i.e.*, by using multiple sources of information—is, as the district court held, "a longstanding business practice." Appx13. For example, universities require students to submit multiple documents to establish in-state residency, such as tax returns, proof of home ownership, or bank records. *Id.* (citing University of Delaware, *Student Residency Classification for Tuition and Fee Purposes* § V.B–C (June 2022), https://sites.udel.edu/generalcounsel/policies/regulations-governing-the-classification-of-students-for-tuition-and-fee-purposes/). In addition, some states require a person to submit multiple forms of proof of address before obtaining a driver's license. *See id.* (citing Delaware Division of Motor Vehicles, *Checklist to Obtain a FEDERALLY COMPLIANT Driver License or Identification Card in the State of Delaware*, https://www.dmv.de.gov/DriverServices/drivers_license/secureID/pdfs/Driver_License_ID_Checklist.pdf).

These real-world examples demonstrate that claim 1 is not directed to solving "a technological problem with computers," as GeoComply

contends. GeoComply Br. 17. Rather, the claim addresses a real-world problem (the need to verify a person's location) using a longstanding solution (multiple pieces of information). Applying this abstract solution to a computer does not entitle GeoComply to a patent. *See Intell. Ventures I LLC*, 792 F.3d at 1370 ("Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility." (citing *Alice*, 573 U.S. at 224)).

GeoComply's contention that these examples overgeneralize the claims lacks merit. GeoComply Br. 20. GeoComply points to the fact that the claimed location verification relies on a particular type of data—*i.e.*, the presence of "certain programs on the user's device." *Id.* But this Court has repeatedly held that limiting an abstract process to a particular type of data is insufficient to render a claim patent-eligible. *See, e.g.*, *SAP*, 898 F.3d at 1168 ("As many cases make clear, even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract." (cleaned up)). Here, the claims do no more than limit a longstanding practice—location verification based on multiple sources of information—to particular types of information (*i.e.*, geolocation data and

21

program data) collected using conventional functionality. That cannot render the claim eligible.

The cases on which GeoComply relies are inapposite because they involved claims directed to improvements in computer functionality rather than the use of computers to implement abstract ideas. *See* GeoComply Br. 20–21. For example, in *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018), a claim was non-abstract because it was directed to "a particular manner of navigating three-dimensional spreadsheets, implementing an improvement in electronic spreadsheet functionality," including notebook tabs as "specific structures within the three-dimensional spreadsheet environment," *id.* at 1011. Similarly, in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), the claimed method was non-abstract because it was directed to an improvement in computer functionality based on specific structures in the computer: "a structure containing a license record" that is stored "in a particular, modifiable, non-volatile portion of the computer's BIOS." *Id.* at 1348–49.

By contrast, claim 1 of the '805 patent does not recite any specific method of verifying a user's location based on geolocation data and

programs on the user's device, nor does it solve any technical problem presented by the idea of "verifying a user's location by checking for 'spoofing' programs." GeoComply Br. 20. This case is therefore more like those in which this Court has found location technology claims to be abstract because they amount to nothing more than computerized versions of real-world practices. *See Elec. Commc'ns Techs.*, 958 F.3d at 1180–81 (claim requiring "monitoring the location of a mobile thing and notifying a party in advance of arrival of that mobile thing" amounted to "nothing more than the fundamental business practice of providing advance notification of the pickup or delivery of a mobile thing"); *Intellectual Ventures I*, 792 F.3d at 1369–70 (claim for tailoring website content "based on the viewer's location or address" was analogous to the longstanding practice of tailoring newspaper inserts "based on information known about the customer," such as "the customer's location").

Similarly, here, claim 1 represents a computerized version of the real-world examples identified by the district court of verifying location based on multiple sources of information. The step of identifying programs using conventional functionality is directly analogous to the

data gathering that must occur in *any* method of verifying a person's location. The real-word examples thus demonstrate that the claim is abstract.

### 2. Claim 1 fails to recite any specific technological solution or improvement.

"In cases involving software innovations, the step-one inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *Zillow*, 50 F.4th at 1377 (cleaned up). Patent claims do not avoid abstractness at *Alice* step one simply because they may be directed to solving a technological problem. *See Dropbox, Inc. v. Sychronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (non-precedential) (holding claims ineligible where "the focus of the claims [was] towards a technological problem[,] [b]ut the claims still recite no technological solution"). Rather, the claims must recite "a specific solution" to a technological problem with "sufficient specificity," rather than "generic steps and results." *Universal Secure Registry*, 10 F.4th at 1354–55; *see also TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (step one inquiry considers "whether the claim is properly characterized as

identifying a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function").

As explained above, claim 1 of the '805 patent addresses a problem—individuals misrepresenting their location—that long predates computers. *See supra* § I.A.1. Although the use of location-spoofing software to disguise one's location is unique to computers, claim 1 fails to recite any specific technological solution to this problem, as the district court concluded. Appx13–14 (distinguishing the '805 patent from patents that claim a "specific asserted improvement in computer capabilities" (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016))).

As an initial matter, claim 1 does not seek to *prevent* the use of location-spoofing programs. It only says to *look* for programs and generate a "geolocation message" based in part on the programs that are found. Yet nothing in the claim specifies how to identify the programs or how to generate the geolocation message. The claim thus does not recite a specific solution to the location-spoofing problem, but rather "an effect or result dissociated from any method by which it is accomplished." *Zillow*, 50 F.4th at 1378; *see also Free Stream Media Corp. v. Alphonso*

*Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) ("[A] claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it to avoid ineligibility." (cleaned up)).

The lack of specificity in claim 1 makes it analogous to claims held ineligible in *Universal Secure Registry*. In that case, this Court considered claims that recited "a method of authenticating an identity of a first entity" based on "first biometric information," "first authentication information," and "second authentication information." *Universal Secure Registry*, 10 F.4th at 1354. The Court held that the claims were directed to the abstract idea of "multi-factor authentication of a user's identity using two devices to enable a transaction." *Id.* The Court rejected the patentee's argument that the claims covered "an innovative technological solution to address problems specific to prior authentication systems," because there was no description of "a specific technical solution by which the biometric information is generated, or by which the authentication information is transmitted." *Id.* at 1354–55.

Similar to the patentee in *Universal Secure Registry*, GeoComply contends that the '805 patent addresses the problem of location-spoofing programs "by detecting programs that may be used to spoof a user's

26

geolocation." GeoComply Br. 19. But that is not a specific technological solution because it does not teach how to detect spoofing programs (or, for that matter, any other programs) or what to do when they are detected. The claim thus "broadly recite[s] generic steps and results—as opposed to a specific solution to a technological problem." *Universal Secure Registry*, 10 F.4th at 1355; *see also Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (claim ineligible where it "simply demands the production of a desired result (non-interfering display of two information sets) without any limitation on how to produce that result").

The '805 patent "does not purport to have invented [program detection] or to improve on that process." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1367 (Fed. Cir. 2023). In fact, the patent fails to disclose *any* technique for program detection. The specification describes two "modules" as providing this functionality, Appx55 (3:42–53) ("[s]creen sharing protection module 330" and "[p]roxy detection module 340"), but it does not explain how these modules are designed, how they detect programs, or where they can be obtained. Figure 3 of the patent simply depicts these modules as two featureless boxes:



FIGURE 3

Appx49 (annotated).

Given the lack of any new technology for detecting programs, the claim at most amounts to a combination of conventional program detection functionality with conventional geolocation technology. *See* Appx56 (6:3–6) (acknowledging the existence of third-party sources for geolocation information). But this Court has held that claiming a combination of conventional techniques does not constitute a specific technological improvement absent "some unexpected result or improvement." *Universal Secure Registry*, 10 F.4th at 1357 (combination of "conventional authentication techniques . . . to achieve an expected cumulative higher degree of authentication integrity" was an abstract idea "rather than a technological solution to a technical problem"); *see*

*also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020) (claim was abstract where it recited the use of conventional graphical processing technology in the well-known environment of object-oriented simulations, "without any claim that the invention reflects an inventive solution to any problem presented by combining the two" (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016))).

GeoComply does not contend that the combination of conventional program detection functionality with conventional geolocation technology presented any technical challenge or led to any unexpected results. Nor does the patent identify any such challenge or unexpected results. Thus, the application of program detection to the environment of geolocation "is no more than an abstract idea." *Simio*, 983 F.3d at 1360.

GeoComply's cursory attempt to distinguish *Universal Secure Registry* is unavailing. After citing the decision, GeoComply asserts that "Xpoint has never contended that identifying certain programs on a user's device *was a conventional way to detect* geolocation spoofing." GeoComply Br. 26 (emphasis added). That misses the point. The Court in *Universal Secure Registry* did not find the claims ineligible because the

29

claimed *combination* of authentication techniques was conventional. Rather, the Court held that the claim was abstract because each *individual technique* was conventional and the claimed combination did not achieve any "unexpected result or improvement" or provide sufficient specificity as to how the techniques were used together. 10 F.4th at 1357. This is indistinguishable from claim 1 of the '805 patent, which recites a combination of conventional technologies, without any unexpected result or any specific solution for accomplishing the combination.

Equally unavailing is GeoComply's reliance on cases in which this Court has found patent claims to recite specific technical solutions to technological problems. *See* GeoComply Br. 16–19, 23. Comparing the specific technical limitations from these cases with claim 1 underscores the absence of any non-abstract technical solution in the '805 patent:

- In *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), the claim recited deploying a plurality of network monitors in a network, detecting suspicious network activity with the network monitors by analyzing network traffic data, generating reports of the suspicious activity, and using hierarchical monitors to integrate the suspicious activity reports, *see id.* at 1301.

- In *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020), the claim recited a method for providing "multi-level multimedia security in a data network," including steps of "accessing an object-oriented key manager"; "selecting" an

object to encrypt, a label, and an encryption algorithm; encrypting and labeling the object; and reading the object label to determine access authorization, *id.* at 1282–83.

- In *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019), the claim recited a "device for producing error checking," with "a varying device" including "a permutating device configured to perform a permutation of bit position," and the claim required that the varying device be "configured to modify the permutation in time," *id.* at 1147–48.

- In *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), the claim recited a structure containing a license record that was "stored in a particular, modifiable, non-volatile portion of the computer's BIOS," and the structure in that memory location was "used for verification by interacting with the distinct computer memory that contains the program to be verified," *id.* at 1348–49.

- In *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018), the claims recited "specific steps—generating a security profile that identifies suspicious code and linking it to a downloadable," with the specific steps achieving the result of improved computer security, *id.* at 1305.

Claim 1 of the '805 patent is not analogous to the claims in any of these five cases. The claim merely recites "identifying" programs through unspecified means and consideration of those programs when generating an undefined "geolocation message," alongside conventional geolocation steps. As the district court thoroughly explained, these functional steps are not comparable to the network monitors, suspicious activity reports, and hierarchical monitors recited in *SRI*, 930 F.3d at 1301; or the object-

oriented key manager and steps of labeling, encryption, and determination of access authorization recited in *TecSec*, 978 F.3d at 1282–83. *See* Appx19–22.[2] Similarly, the functional steps of claim 1 are not comparable to the varying device and permutating device recited in *Koninklijke*, 942 F.3d at 1147–48; the "particular, modifiable, non-volatile portion of the computer's BIOS" recited in *Ancora*, 908 F.3d at 1348–49; or the specific steps of security profile generation, suspicious code identification, and linking recited in *Finjan*, 879 F.3d at 1305.

GeoComply's attempt to analogize these cases to the '805 patent only underscores their inapplicability. GeoComply asserts that the patent claims a "specific way of determining whether spoofing may be present" because claim 1 requires "identifying that one or more selected programs are present at the first device." GeoComply Br. 24. But this step does not recite any specific way of checking for spoofing programs, and there is no contention that the step does anything beyond applying

---

[2] As the district court held, *SRI* is also distinguishable because, unlike in that case, claim 1 of the '805 patent has "no effect on the normal operation of the computing device." Appx20 ("[T]he court in *SRI* explained that the claims in that case altered the functioning of the computer network by 'actually preventing the normal, expected operation' of the network." (quoting *SRI*, 930 F.3d at 1304)). GeoComply does not dispute, or even address, this basis for distinguishing *SRI*.

conventional program detection functionality to the environment of geolocation. Thus, the district court was correct to conclude that the patent claims "only . . . a desirable result or function." Appx21.

### 3. Claim 1 amounts to collecting, transmitting, and analyzing data in functional terms.

Claim 1 is abstract not only because of what it lacks—*i.e.*, a specific technological solution—but also because of what it recites: collection, transmission, and analysis of data in functional terms. This Court has "repeatedly held claims 'directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner' to be abstract." *Zillow*, 50 F.4th at 1378 (quoting *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022)).

For example, in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), the claim recited a "method of detecting events on an interconnected electric power grid" that included, among other steps, "receiving a plurality of data streams," "detecting and analyzing events in real-time," "displaying the event analysis results," and "deriving a composite indicator of reliability." *Id.* at 1351–52. The Court held that the claims were focused on "a process of gathering and analyzing

information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* at 1354; *see also id.* ("[T]he focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.").[3]

Here, as the district court held, claim 1 recites data collection and analysis steps in functional terms. Appx14–15. In particular, claim 1 requires, in part, "transmitting a request," "collecting geolocation data," "identifying that one or more selected programs are present," "transmitting the geolocation data and programs and a list of the present selected programs," "receiving" an undefined "geolocation message," which is "generated" at least in part from the aforementioned data, and

---

[3] *See also, e.g.*, *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) (claim was abstract where it used computers "to identify when a condition is met and then to distribute information based on satisfaction of that condition"); *Elec. Commc'n Techs.*, 958 F.3d at 1182 (claim was abstract because it amounted to "nothing more than gathering, storing, and transmitting information"); *SAP*, 898 F.3d at 1167 (claims were abstract where they focused on "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis"); *Two-Way Media*, 874 F.3d at 1337 (claim was abstract where it recited "a method for routing information using result-based functional language," including "the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records'").

"providing the received geolocation message." Appx58 (10:15–33). Similar to the abstract "receiving," "detecting," and "deriving" steps in *Electric Power Group*, the steps of claim 1 of the '805 patent amount to gathering and analyzing information and providing an indication of the results through the use of a "geolocation message." *See* 830 F.3d at 1351–52, 1354. Such a data processing method is an abstract idea. *See Zillow*, 50 F.4th at 1378. ("Identifying, analyzing, and presenting certain data to a user is not an improvement specific to computing.").

In the district court, GeoComply conceded that the claims recite "methods for electronic analysis, verification, and reporting of geolocation data." Appx310. On appeal, however, GeoComply relies on *SRI* to argue that the claimed data collection and analysis is non-abstract because it is done "for the purpose of solving the technological problem of detecting users attempting to spoof their geolocation." GeoComply Br. 22. But as explained above, *supra* § I.A.2, and as the district court held, Appx20, *SRI* is inapposite because the claim there required a specific technique for using network traffic data and suspicious activity reports to improve the security of the network. *See SRI Int'l*, 930 F.3d at 1303–04. Claim 1 of the '805 patent, by contrast, does not collect data that is then used as

part of a specific solution to the spoofing problem. Rather, the collection of program data *is* the alleged "solution" according to GeoComply. *See* GeoComply Br. 24 (arguing that the step of "identifying" programs is the "specific way of determining whether spoofing may be present"). Because "[t]he advance [claim 1] purport[s] to make is a process of gathering and analyzing information of a specified content," the claim is "directed to an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1354.

### 4.    Claim 1 is broad in scope.

As the district court held, the broad scope of claim 1 further demonstrates its abstractness. Appx15–17 (explaining that claim 1 would preempt "a wide range of activities relating to geolocation, even outside the context of online gaming" and identifying several real-world, non-gaming examples to illustrate the claim's breadth). GeoComply incorrectly suggests that claim scope is an "improper[]" consideration at *Alice* step one. GeoComply Br. 25. To the contrary, this Court routinely relies on the breadth of claims in finding those claims abstract. *See, e.g.*, *Universal Secure Registry*, 10 F.4th at 1355 ("The claims are likewise broad and nonspecific."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019) (holding that a claim for a charging station

was abstract because "the broad claim language would cover any mechanism for implementing network communication on a charging station, thus preempting the entire industry's ability to use networked charging stations"); *Interval Licensing*, 896 F.3d at 1345–46 (holding that claims were directed to an abstract idea where they "broadly recited" acquiring and organizing information and certain limitations "are recited only at the broadest, functional level").

GeoComply also suggests that the district court held that the claims "preempt all methods of 'verifying a person's location' (Appx12)" or "all ways to 'verify[] a user's location using multiple data sources' (Appx22)." GeoComply Br. 25. But the court made no such holding. *See* Appx15–17. Instead, the court's preemption analysis explicitly discussed the requirements of claim 1 and then identified three examples of activities that "illustrate the broad preemptive scope" of the claim. Appx15–17. Notably, GeoComply does not contend that any of these examples fall outside the scope of claim 1. The district court's examples thus support its conclusion of abstractness.[4]

---

[4] As discussed below, *infra* § I.D, the district court's discussion of these examples did not amount to impermissible consideration of materials outside the record.

## B.     At *Alice* Step Two, the District Court Correctly Held That Claim 1 Lacks an Inventive Concept.

In searching for an inventive concept, courts consider "the elements of the claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Simio*, 983 F.3d at 1363 (quoting *Alice*, 573 U.S. at 217). The district court correctly held that there is no such inventive concept in claim 1 of the '805 patent—whether the limitations are considered individually or in combination—and it properly rejected GeoComply's reliance on conclusory and irrelevant factual allegations in the operative complaint.

### 1.     None of the elements individually transforms claim 1 into a patent-eligible application.

Considered individually, the steps of claim 1 are limited to generic computer components carrying out conventional functions. Such claim elements do not provide an inventive concept. *See Elec. Commc'n Techs.*, 958 F.3d at 1183 (claim fails at step two where it is "specified at a high level of generality, is specified in functional terms, and merely invokes well-understood, routine, conventional components and activity to apply the abstract idea").

First, nothing about any of the recited components in claim 1—a generic "device" and two generic "server[s]," Appx58 (10:15–33)—is inventive. The specification discloses that the device and servers can be "any" type of computer. *E.g.*, Appx54 (2:10–14) (referencing "the user's PC/Mac/Mobile device"); Appx57 (8:48–52) (computer system 600 can be "any" type of "computing device"); Appx58 (9:60–62) (same for computer system 700). The specification further admits that the components within the computers "represent a broad category of such computer components that are well known in the art." Appx57 (8:44–48); Appx58 (9:55–59). Neither the specification nor GeoComply contends that the claimed device or servers are inventive.

Second, none of the steps carried out by these generic components is inventive because they consist of conventional computer operations recited in functional terms. The steps of "transmitting" data, "collecting geolocation data," "identifying" programs, and "receiving" and "providing" data, are all routine computer operations described at a high level of generality. *See Trinity Info Media*, 72 F.4th at 1367 (noting that this Court has "found no inventive concept where claims merely recited

'generic features' or 'routine functions' to implement the underlying abstract idea" (citation omitted)).

GeoComply does not appear to argue that any individual limitation supplies an inventive concept. GeoComply Br. 31 (arguing that the claims are eligible "as an ordered combination"). Although GeoComply makes a cursory reference to the identifying step as "unconventional," *id.* at 30, GeoComply did not rely on this step, or any other step in isolation, as providing the inventive concept in the district court. Appx23 (noting that GeoComply did not "argu[e] that a particular claim limitation provides the required inventive concept"). Thus, GeoComply has waived any such argument. *See Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174–75 (Fed. Cir. 2019) (declining to consider argument raised for the first time on appeal).

In any case, the specification demonstrates that there was nothing unconventional or inventive about program detection. The patent provides only a conclusory, black-box disclosure of "[s]creen sharing protection module 330" and "[p]roxy detection module 340." Appx55 (3:42–53); Appx49 (Fig. 3). The specification does not assert that program detection functionality is new, and GeoComply has never alleged that it

invented—or even improved—any techniques for identifying programs.

Thus, the identifying step does not constitute an inventive element at

step two. *See Interval Licensing*, 896 F.3d at 1347 (limitation of "user

interface installation instructions" did not supply inventive concept

where patentee "does not, and cannot, contend that it is arguably

inventive to enable a person to access information over a network

through a user interface"); *Intellectual Ventures I*, 792 F.3d at 1370

("interactive interface" limitation did not supply inventive concept where

patentee did not "assert that it invented an interactive interface").

### 2. The elements in combination fail to transform the claim into a patent-eligible application.

Considered as an ordered combination, the limitations recited in

claim 1 similarly fail to recite an inventive concept that could save the

claim at step two. The steps of claim 1 do no more than implement the

abstract idea—*i.e.*, "determining the location of a device based on

geolocation information and programs present on the device," Appx12—

using generic hardware performing conventional functionality. The claim

provides no specificity as to how the determination is made, nor does it

"provide an inventive solution to a problem in implementing the idea."

*Free Stream Media*, 996 F.3d at 1366. Because the claim lacks any

meaningful limitations beyond the abstract idea itself, it does not survive at *Alice* step two.

GeoComply relies on the combination of "traditional" geolocation with program detection as supposedly providing an inventive concept. GeoComply Br. 30 ("The claimed invention thus combines traditional geolocation information with unconventional information about the presence of certain programs on the device to verify a user's geolocation."). But GeoComply's purported inventive concept is indistinguishable from the abstract idea itself. As this Court has held, "[a] claimed invention's 'use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.'" *Simio*, 983 F.3d at 1363 (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

GeoComply repeatedly characterizes the combination of geolocation functionality with program detection functionality as "unconventional." GeoComply Br. 30. "But the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine." *BSG*, 899 F.3d at 1290. The purported novelty of GeoComply's combination of existing

functionality does not make it patent-eligible. *See Simio*, 983 F.3d at 1364 ("Indeed, a claim for a *new* abstract idea is still an abstract idea." (cleaned up; emphasis in original)); *Elec. Commc'n Techs.*, 958 F.3d at 1182 ("We may assume that the techniques claimed are groundbreaking, innovative, or even brilliant, but that is not enough for eligibility." (cleaned up)).

As discussed above, GeoComply does not claim it invented (or even disclosed) any method for detecting spoofing programs. *See supra* § I.B.1. That is fatal to its step two argument: "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG*, 899 F.3d at 1290–91. Here, the use of conventional program detection techniques to detect location spoofing programs cannot constitute a patent-eligible application of the abstract idea. *See Free Stream Media*, 996 F.3d at 1366 ("But even assuming the bypassing of mobile device security mechanisms had not been done before, there is nothing inventive disclosed in the claims that permits communications that were previously not possible."); *Interval*

*Licensing*, 896 F.3d at 1348 ("Appending rote conventional activity in this way to an abstract idea does not amount to an inventive concept.").

GeoComply offers no argument that the '805 patent overcame any technical challenges or yielded unexpected results in applying conventional program detection functionality to the context of geolocation. To the contrary, the result of this combination is entirely expected: programs are detected when program detection is combined with geolocation. Where, as here, a combination of conventional elements achieves nothing more than the "expected sum" of the combination, no inventive concept is present. *See Universal Secure Registry*, 10 F.4th at 1355 (at step two, claims held ineligible where there was no basis for a plausible inference that "the claimed combination of . . . conventional authentication techniques achieves more than the expected sum of the security provided by each technique").

> **3.** ***CosmoKey*** **and** ***DDR*** **are inapposite because the '805 patent does not claim any specific technological solution.**

GeoComply's reliance on *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021), and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), is misplaced. The

claims at issue in those cases were eligible at step two because—unlike the claim here—they recited specific technological solutions that amounted to more than just an abstract idea applied on a computer.

In *CosmoKey*, the district court held that the claims were "directed to the abstract idea of authentication—that is, the verification of identity to permit access to transactions." 15 F.4th at 1097 (cleaned up). The specification described the benefit of the invention as reducing the complexity of the authentication function because "the only activity that is required from the user for authentication purposes is to activate the authentication function at a suitable timing for the transaction." *Id.* at 1099 (quoting specification). The claim recited several specific steps for implementing an authentication technique, including "ensuring that the authentication function is normally inactive, activating only for a transaction, communicating the activation within a certain time window, and thereafter ensuring that the authentication function is automatically deactivated." *Id.* Nothing in the specification indicated that these various claimed steps were conventional. *See id.* at 1098. This Court held that the claims were eligible at step two because they required "a specific set of ordered steps that go beyond the abstract idea identified by the district

court and improve upon the prior art by providing a simple method that yields higher security." *Id.* at 1099.

Here, unlike in *CosmoKey*, claim 1 of the '805 patent does not recite a specific technological solution that goes beyond the abstract idea of determining location based on geolocation data and program data. Instead, it recites the same abstract idea described in the specification and identified by the district court. Appx54 (2:7–10) (explaining that the "present technology" includes "such techniques as a program to 'sniff' out attempts to mask a digital user's location through such methods as 'screen sharing' or use of 'proxy servers'"). The "specific set of ordered steps" that GeoComply identifies, GeoComply Br. 33, consist of collecting the geolocation data, collecting the program data, and determining location based on the data—all of which are part of the abstract idea.

*DDR* is distinguishable on the same basis. There, the specification described a solution for maintaining internet visitor traffic in which a host generated a "web page that 'gives the viewer of the page the impression that she is viewing pages served by the host' website.'" *DDR*, 773 F.3d at 1249 (quoting specification). The claims recited several specific elements that, when combined, would generate a composite web

page—for example, "a data store including a look and feel description associated with a host web page having a link correlated with a commerce object," and a processor programmed "upon receiving an indication that the link has been activated by a visitor computer in Internet communication with the host web page, to serve a composite web page to the visitor computer wit[h] a look and feel based on the look and feel description in the data store and with content based on the commerce object associated wit[h] the link." *Id.* These several elements recited in the claim explained how to achieve the patent's stated objective of giving a viewer "'the impression that she is viewing pages served by the host' website." *Id.* (quoting specification). Thus, the claims in *DDR* recited "significantly more" than an abstract idea. *See id.* at 1255.

Here, by contrast, claim 1 "do[es] not offer a particular solution to a problem that, in *DDR Holdings*, was unique to the Internet." *Interval Licensing*, 896 F.3d at 1347. GeoComply does not contend that, before the '805 patent, computers were unable to perform geolocation or detect programs. Claim 1 recites the combination of this existing functionality in a results-oriented manner, without explaining how to determine location based on the geolocation and program data. The lack of any

particular solution in the claim distinguishes this case from *DDR*. *See id.* ("The asserted improvement here is the presentation of information in conjunction with other information. Such an information-based improvement is not an improvement 'rooted in computer technology.'" (quoting *DDR*, 773 F.3d at 1257)); *see also USC IP P'ship, L.P. v. Meta Platforms, Inc.*, No. 2022-1397, 2023 WL 5606977, at *3 (Fed. Cir. Aug. 30, 2023) (non-precedential) (distinguishing *DDR* where the claims at issue recited only "'high-level functional language' such as 'processing the confirmed intent,' with no limitation as to 'how processing steps are performed'" (citation omitted)).

### 4. GeoComply's selective excerpts from the specification fail to establish an inventive concept.

There is no merit to GeoComply's argument that the district court disregarded certain "benefits" described in the specification. GeoComply Br. 34. As the district court concluded, Appx26–27, the specification passages identified by GeoComply—many of which it quotes selectively—clearly pertain to unclaimed features or are otherwise insufficient to establish any inventive concept. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) ("[T]he *claim*—as opposed to something purportedly

described in the specification—is missing an inventive concept." (emphasis in original)).

First, GeoComply quotes the specification's reference to "unmatched accuracy," GeoComply Br. 34, but omits the remainder of the sentence: "unmatched accuracy as [the system] determines a player location ***within meters***." Appx57 (7:46–48) (emphasis added). Determining a geolocation "within meters" is irrelevant to claim 1 because none of the recited steps relates to improved *measurement* of a geolocation. The identification of spoofing programs on a user's device does not plausibly improve the precision of the geolocation itself.

Second, GeoComply quotes the specification's reference to "increase[d] reliability," GeoComply Br. 34, but again omits the surrounding language: "The system ***may use multiple positioning technologies*** to increase reliability of results ***across diverse topologies***." Appx57 (7:48–50) (emphasis added). None of the limitations in claim 1 recites the use of multiple positioning technologies or any other technology for improved geolocation performance in densely forested areas, canyons, or other "topologies."

Third, GeoComply quotes the specification's reference to "a more reliable calculation of a digital user's location," GeoComply Br. 34, but the specification makes clear that the calculation results from assessment of "multiple single sources of geolocation data," Appx54 (2:3–5) ("The algorithm assesses multiple single sources of geolocation data to derive a more reliable calculation of a digital user's location."). Claim 1 does not require multiple single sources of geolocation data, and GeoComply does not contend that this is the inventive concept. Although the claim does require the consideration of both geolocation data and program data, this does not provide the requisite inventive concept. As explained above, the use of multiple sources of information to make a more reliable determination of location is an unpatentable abstract idea. *See supra* § I.A.1.

Nor does the specification's cursory discussion of spoofing, GeoComply Br. 34, establish the presence of an inventive concept in claim 1. While the patent may recognize that spoofing was a problem, Appx54 (2:7–10), claim 1 does not recite any specific technology for solving the problem. To the extent the claimed method "make[s] it harder to 'spoof,'" Appx54 (2:5–7), that is due to the abstract idea itself—*i.e.*, determining

location based in part on programs that are present on the device—rather than "any meaningful *application* of this idea." *Simio*, 983 F.3d at 1364; *see also PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021) (holding that patentee's alleged "'improvements in the specification' . . . 'lie entirely in the realm of abstract ideas, with no plausibly alleged innovation in the non-abstract application realm'" (quoting *SAP*, 898 F.3d at 1163) (cleaned up)).

### 5. There are no factual disputes concerning whether claim 1 contains an inventive concept.

The district court properly held that the conclusory allegations in GeoComply's complaint were insufficient to establish an inventive concept. Appx27–29. On appeal, GeoComply fails to identify any allegation in the complaint plausibly alleging the existence of an inventive concept.

GeoComply cites the following five allegations:

- "The '805 Patent addresses technical problems arising out of the confluence of legal, regulatory, and commercial considerations in the nascent and increasingly popular online gaming industry." Appx72 (¶ 12).

- "The '805 Patent provides an innovative geolocation engine that is highly secure and versatile, allowing gaming providers to securely and reliably determine a user's playing location—and, in turn, whether a user is permitted to use an online gaming service." *Id.*

51

- "Trying to evade state restrictions on online gaming, some users employ programs and techniques to make the user's device appear as if it were in a location that is not its true location; such programs and techniques include VPNs, spoofing, proxy servers, and screen sharing." *Id.* (¶ 13).

- "An application, plugin, applet, HTML code, or the like may be utilized to detect and collect the user device's geolocation data." *Id.*

- "Geolocation data may include Wi-Fi geolocation data, internet protocol geolocation data, screen sharing program detection, proxy detection, cell tower data, and GPS data, among other data." *Id.*

*See* GeoComply Br. 36.

None of these allegations plausibly establishes an inventive concept in claim 1. The first allegation includes only a passing reference to unidentified "technical problems," and the third allegation simply notes the existence of location spoofing. Appx72 (¶¶ 12–13). Neither allegation provides any description of a solution (let alone a specific solution recited in the claims). The second allegation describes the patent as "innovative" in conclusory fashion, without alleging what is innovative or why. *Id.* (¶ 12).

The fourth allegation asserts that an application (or something similar) could be "utilized to detect and collect the user device's geolocation data," while the fifth allegation describes certain types of

"geolocation data." *Id.* (¶ 13). These allegations are irrelevant, as GeoComply does not contend that the method of collecting geolocation data or the kind of geolocation data collected is inventive. Although the fifth allegation mentions "screen sharing program detection" and "proxy detection" in passing, it fails to describe anything about these types of data that would establish the existence of an inventive concept.

As this Court has held, "[o]nly plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Zillow*, 50 F.4th at 1379 (cleaned up). Conspicuously absent from GeoComply's complaint is any statement—let alone a plausible and specific one—that "the detection of spoofing programs—or at least the ordered combination of that step with the others in the claimed methods," was an inventive solution to the problem of spoofing. GeoComply Br. 37. The complaint neither alleges how spoofing programs are detected in the patent nor identifies any technical challenge involved in detecting spoofing programs or combining conventional program detection functionality with conventional geolocation functionality. The allegations thus do not plausibly identify any inventive concept. *See Dropbox*, 815 F. App'x at 538 (affirming dismissal based on section 101 where the complaint

"vaguely allege[d]" how an asserted patent "is an advancement over the prior art").

GeoComply cites *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), GeoComply Br. 35, but that case is readily distinguishable. In *Cellspin*, the patentee alleged "several ways in which its application of capturing, transferring, and publishing data was unconventional," and that "its specific ordered combination of elements was inventive." 927 F.3d at 1316–17; *see id.* at 1318 (patentee "specifically alleged that using HTTP at a specific location, here at the intermediary mobile device, was inventive" and "further alleged that establishing a paired connection before transmitting data was inventive" (emphasis omitted)).

Here, as explained above, no comparable allegations are present. As the district court concluded, the complaint "provides only conclusory and undetailed allegations as to the inventiveness of the asserted claims." Appx29. The allegations thus do not create any factual dispute. *See Simio*, 983 F.3d at 1365 ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *Bridge and Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 894  (Fed. Cir. 2019) (non-

precedential) (district court "was not required to accept [the plaintiff]'s legal conclusions as true," including "repeated characterizations of its inventions as 'technical innovations'" (cleaned up)).

### C.    The District Court's Analysis of Dependent Claims 7 and 8 Does Not Warrant Reversal.

On appeal, GeoComply argues for the first time that claims 7 and 8 are eligible even if claim 1 is not. GeoComply Br. 38–41. Because GeoComply failed to raise this argument in the district court, the argument is waived. GeoComply's argument also fails on the merits, because the trivial limitations recited in claims 7 and 8 are plainly insufficient to render those eligible.

#### 1.    GeoComply waived any separate argument as to the eligibility of claims 7 and 8.

In the district court, GeoComply failed to present any eligibility argument specific to any of the dependent claims, including claims 7 and 8. GeoComply therefore waived its argument that these claims are eligible, and this argument should not be considered for the first time on appeal. *See Hylete*, 931 F.3d at 1174–75 (declining to consider argument raised for the first time on appeal).

The two sentences that GeoComply identifies from its district court brief are insufficient to preserve its new arguments on claims 7 and 8.

GeoComply Br. 42. The first sentence provides only a cursory summary of these claims: "These programs may include a 'proxy application' (*id.* at cl. 7) or a 'screen sharing program' (*id.* at cl. 8)." Appx311. The second sentence, which appears in a footnote, is a generic placeholder argument that is not specific to claims 7 and 8: "Dependent claims 2 through 9, for example, add further technical limitations to the steps described in independent claim 1." Appx311 (n.1). Neither sentence advances any separate, substantive argument as to the eligibility of claim 7 or 8, and these sentences thus failed to preserve the issue for appeal. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal, and we do so here.").[5]

---

[5] *See also Splunk Inc. v. Cribl, Inc.*, No. 3:22-cv-7611, 2023 WL 2562875, at *5 (N.D. Cal. Mar. 17, 2023) (holding claims ineligible in part because the patentee's "cursory comments on a few independent and dependent claims in the opposition do not present meaningful arguments for meaningful differences"); *Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*, No. 1:22-cv-1260, 2023 WL 4850567, at *4 (D. Del. July 28, 2023) (report and recommendation finding waiver as to dependent claims where the patentee presented its argument "through a somewhat cursory footnote").

The lone case GeoComply cites does not support its position. GeoComply Br. 42–43 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)). In *Berkheimer*, the patentee specifically argued in the district court that dependent claim limitations "drawn to effecting a one-to-many change" added inventive concepts. *Id.* at 1365. For example, the patentee argued to the district court that "innovative aspects of the claims improve computerized digital asset and content management systems by . . . [among other things] linking objects to enable one to many editing. . . . Such improvements to computer functionality are precisely the kind of improvements that have been found patent eligible under *Alice*." *Id.* This Court held that there was no waiver because the patentee "advanced meaningful arguments regarding limitations found only in the dependent claims." *Id.*

Here, unlike in *Berkheimer*, GeoComply did not advance any meaningful arguments regarding limitations found only in claims 7 and 8. Its present arguments are therefore waived. And GeoComply does not argue that any exception to waiver applies. Accordingly, this Court should disregard GeoComply's arguments as to claims 7 and 8.

## 2. In any event, claims 7 and 8 are ineligible.

Even if this Court were to consider GeoComply's waived arguments, they would fail to warrant reversal. The minor limitations in claims 7 and 8 are insufficient as a matter of law to convert the abstract idea of claim 1 into an eligible, non-abstract invention.

Claims 7 and 8 state that the "programs" in claim 1 include "a proxy application" (claim 7) or "a screen sharing program" (claim 8). In other words, the claims merely limit the unpatentable idea of claim 1—*i.e.*, determining location based on geolocation and program data—to particular types of programs. This Court has repeatedly held that restricting an abstract data processing claim to a particular type of data fails to transform the idea into a patent-eligible invention. *See, e.g.*, *SAP*, 898 F.3d at 1168 ("As many cases make clear, even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract." (cleaned up)); *BSG*, 899 F.3d at 1287 n.1 ("Although the[] [dependent] claims cover a narrower range of data input than claim 1, the claims' focus remains on the abstract idea . . . .").

Ignoring this precedent, GeoComply contends that claims 7 and 8 lead to a different outcome at step one because they "specify particular programs that can be identified to detect potential geolocation spoofing." GeoComply Br. 39. But this fails to address the critical lack of specificity in claim 1. That claim is ineligible not because it fails to define the programs that are detected, but because it fails to recite a specific technical solution for *how* the programs are identified and *how* the "geolocation message" is generated. *See supra* § I.A.2. Claims 7 and 8 do not address these shortcomings.

As to step two, GeoComply repeats its flawed argument that detection of proxy applications or screen sharing programs was not "a conventional activity in geolocation." GeoComply Br. 39. As explained above, "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine." *BSG*, 899 F.3d at 1290. Claims 7 and 8 fail at *Alice* step two because they do not *apply* the abstract idea of claim 1 in an inventive way—they only narrow it to proxy applications and screen sharing programs. "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *Id.* at 1291. Any allegation that "screen sharing program detection" and

"proxy detection" were "innovative" solutions for geolocation spoofing would fail for the same reason—even if GeoComply had made such an allegation in the complaint (which it did not). GeoComply Br. 39 (citing Appx72).

GeoComply erroneously accuses the district court of having regarded proxy applications or screen sharing programs as "black boxes." GeoComply Br. 41 (citing Appx24, Appx34). But the district court made no such statement. To the contrary, as stated on a page of the decision quoted by GeoComply, the district court observed that "[s]creen sharing protection *module*" and "proxy detection *module*" are "classic 'black boxes.'" Appx24 (emphasis added). These abstract "module[s]" are distinct from the types of software programs that they supposedly detect. GeoComply does not (and cannot) dispute that the specification provides nothing more than a black-box disclosure of these modules.

GeoComply further criticizes the district court for describing claims 7 and 8 as reciting functional limitations, pointing to an identification in the specification of non-limiting examples of screen sharing programs (but not proxy applications). GeoComply Br. 41 (citing Appx56 (5:57–58)). But the specification's reference to examples of screen sharing programs

does nothing to resolve the lack of specificity regarding *how* the black-box modules detect such programs, and *how* the undefined "geolocation message" is generated, as discussed above. Thus, none of GeoComply's various waived arguments regarding claims 7 and 8 establishes any reversible error by the district court.

### D.    The District Court's Discussion of Examples in Its Step One Analysis Does Not Warrant Reversal.

GeoComply faults the district court for considering real-world examples such as casinos and Netflix video streaming, which GeoComply characterizes as "improperly making factual assumptions." GeoComply Br. 43–44. GeoComply's criticism is baseless. Courts routinely discuss real-world examples when evaluating the abstractness of patent claims at the pleading stage. *See, e.g.*, *Interval Licensing*, 896 F.3d at 1344 (affirming a district court's grant of judgment on the pleadings where the district court relied on the examples of "a television station's use of a breaking news ticker across the bottom of the screen" and "passing a note to a person who is in the middle of a meeting or conversation" (cleaned up)); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (affirming grant of judgment on the pleadings where the magistrate judge relied on "transistor radios and portable televisions as

61

commonplace examples of the delivery of audio media to portable electronic devices" and rejecting the patentee's argument that the magistrate "improperly engaged in fact-finding"). The district court's discussion of examples is therefore consistent with this Court's precedent.

Notably, GeoComply did not object in the district court to the consideration of the very examples about which it now complains. Xpoint discussed examples involving casinos in its motion to dismiss, Appx220–21, and GeoComply addressed those examples in its opposition brief without ever claiming that it needed discovery or that the motion should be converted to a motion for summary judgment, Appx312. At the hearing, the district court described an example of a video streaming service that imposed geographic restrictions on its viewers and asked GeoComply's counsel if claim 1 would apply to the example. Appx1545–1546 (69:25–70:12). Rather than objecting, GeoComply's counsel answered, "Yes." Appx1546 (70:13–14). GeoComply's present criticism of the district court's discussion of examples involving casinos and video streaming cannot be squared with its conduct before that court.

The two cases GeoComply cites are inapposite. *See* GeoComply Br. 43. In *CODA Development S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350 (Fed. Cir. 2019), the district court improperly considered an article attached to a reply brief to determine whether alleged trade secrets had been publicly disclosed, *see id.* at 1360. Whether the article disclosed the alleged trade secrets was a "hotly . . . disputed factual issue." *Id.* In *Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016), the district court heard testimony on a preliminary injunction motion, relied on that testimony to deny the injunction, and then incorporated by reference its injunction analysis to grant a motion to dismiss, *see id.* at 361 & n.10. Here, by contrast, the district court discussed the examples to reason by analogy and illustrate the abstractness of the claims at *Alice* step one, Appx15–17, and GeoComply does not dispute the facts concerning those examples. The court did not improperly resolve any "hotly disputed" factual issues, nor did it rely on analysis of hearing testimony from a different procedural context.

Moreover, any alleged error on the part of the district court was harmless. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1360–61 (Fed. Cir. 2023) (affirming a motion to dismiss for patent

ineligibility, even where the district court considered extraneous materials, because there was no showing that the "district court in any way hinged its decision on extraneous materials"). Here, the court's opinion established the ineligibility of the '805 patent based on the claim language, the specification, the parties' briefing, and GeoComply's operative and proposed allegations. The court's discussion of examples—the facts of which GeoComply does not dispute—as further support for its conclusion does not establish any reversible error.

## II. The District Court Properly Denied Leave to Amend the Complaint Because GeoComply's Proposed Allegations Were Futile.

The district court properly considered and rejected GeoComply's proposed amended allegations as futile. Appx29–32. The proposed allegations relating to section 101 were limited to six paragraphs containing general statements about geolocation and spoofing, including statements excerpted from a handful of articles. Appx865–867 (¶¶ 12–17) (redline version of proposed amended complaint). As the district court correctly observed, these allegations offered "very little with respect to the patent eligibility issue." Appx29.

None of the proposed allegations addresses the shortcomings in the original complaint. They do not discuss the claims at all—let alone provide "any plausible and specific allegations that any aspect of the claims is inventive." *Zillow*, 50 F.4th at 1379. None of the allegations mentions anything regarding the use of program detection with geolocation—the crux of GeoComply's eligibility theory. Thus, the proposed amended complaint, like the original complaint, fails to plausibly allege that the claims of the '805 patent are eligible under section 101.

GeoComply characterizes the proposed amended complaint as alleging that "it was not known 'how to reliably verify geolocation data,'" GeoComply Br. 45 (quoting Appx865–66 (¶ 14)), but this allegation does not state that anything in the claims provides an inventive solution to this problem. Moreover, as the district court explained, GeoComply mischaracterizes the article on which the allegation relies. Appx31. The cited article states, "Nevada has not said precisely how it will determine a poker player's geographic location . . . ." Appx769. This statement does not support GeoComply's assertion that it was "not known 'how to reliably verify geolocation data.'" *See* Appx31 ("The author's statement

establishes no more than that the author has not been advised by Nevada authorities how they plan to deal with the problem of determining poker players' locations."). GeoComply ignores this aspect of the district court's decision and instead doubles down on its mischaracterization.

The other proposed allegations that GeoComply identifies similarly fail to allege specifically that any aspects of the claims are inventive. GeoComply Br. 45. The allegations mention unclaimed geolocation technologies (such as GPS) and a "problem" with users "thwart[ing] geolocation tools," including "spoofing." Appx865–66 (¶¶ 12, 15). They also allege that a "solution" remained "elusive," without ever alleging what constitutes the "solution," or how, if at all, the "solution" relates to any claims of the patent. Appx866 (¶ 16). Given that these allegations are silent about the claims, they do not even rise to the level of the conclusory allegations that this Court rejected in *Simio*. *See* 983 F.3d at 1365 (affirming denial of leave to amend complaint where new allegations about the "claimed executable process," "claimed system," and "invention" "just repackage assertions of non-abstractness [the Court] already rejected as a matter of law—for example, the improved

'efficiency' and 'processing speed' . . . inherent with applying the abstract idea").

## CONCLUSION

This Court should affirm the district court's judgment.

Dated: October 10, 2023               Respectfully submitted,

                                      */s/ Peter A. Swanson*
                                      Peter A. Swanson


Peter A. Swanson                      Michael E. Bowlus
Gary M. Rubman                        COVINGTON & BURLING LLP
COVINGTON & BURLING LLP               Salesforce Tower
One CityCenter                        415 Mission Street, 54th Floor
850 Tenth Street, NW                  San Francisco, CA 94105
Washington, DC 20001                  Tel: (415) 591-7014
Tel: (202) 662-6000                   Fax: (415) 955-6514
Fax: (202) 778-6000


*Counsel for Defendant-Appellee Xpoint Services LLC*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because this brief contains 12,494 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font.

Dated: October 10, 2023         */s/ Peter A. Swanson*

Peter A. Swanson
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 778-6000

*Counsel for Defendant-Appellee Xpoint Services LLC*